## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EPIC! CREATIONS, INC., *et al.*,[1] | Case No. 24-11161 (JTD) |
| Debtors. | (Jointly Administered) |
| Claudia Z. Springer, Chapter 11 Trustee, | Adv. Pro. No. 24-50233 (JTD) |
| Plaintiff, | (Jointly Administered) |
| vs. | |
| Google LLC, Voizzit Technology Private Ltd., Voizzit Information Technology LLC, Vinay Ravindra, and Rajendran Vellapalath | |
| Defendants. | **Re. Adv. D.I. Nos. 2, 3, 4, 14, 18, 36, 39, & 80** |

## TRUSTEE'S REPLY IN SUPPORT OF CHAPTER 11 TRUSTEE'S REQUEST FOR CIVIL SANCTIONS PURSUANT TO THE COURT'S ORDER TO SHOW CAUSE

**PASHMAN STEIN WALDER HAYDEN, P.C.**
Henry J. Jaffe (No. 2987)
Joseph C. Barsalona II (No. 6102)
Alexis R. Gambale (No. 7150)
824 N. Market Street, Suite 800
Wilmington, DE 07601
Telephone: (302) 592-6497
Email: hjaffe@pashmanstein.com
        jbarsalona@pashmanstein.com
        agambale@pashmanstein.com

Dated: January 28, 2025

**JENNER & BLOCK LLP**
Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 923-2952
Email: csteege@jenner.com
        mroot@jenner.com
        wwilliams@jenner.com

*Counsel to the Trustee*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Epic! Creations, Inc. (9113); Neuron Fuel, Inc. (8758); and Tangible Play, Inc. (9331).

## INTRODUCTION

On December 4, 2024, this Court found that Defendants had failed "to comply with the Court's temporary restraining order" (the "TRO") [Adv. D.I. 14] and directed them to "SHOW CAUSE why they should not be held in civil contempt of Court for their failure to comply with this Court's TRO." [Adv. D.I. 39 (the "Show Cause Order").] In the *eight weeks* between the entry of the Show Cause Order and the upcoming Show Cause hearing, Defendants did virtually ***none of the things*** this Court ordered them to do and instead continued to take actions that violated both the TRO and the subsequent preliminary injunction extending the TRO. [Adv. D.I. 36, (the "PI")].[2]

Instead of relinquishing control over the Debtors' property, as commanded by paragraph 4 of the TRO (and PI), Rajendran Vellapalath and his two companies—Voizzit Technology Private Ltd. and Voizzit Information Technology LLC (the "Voizzit Defendants")—filed a lawsuit in India claiming they owned the Debtors' intellectual property, including its Google accounts, and asking the Indian court to order the property returned to them. In their Response, the Voizzit Defendants claim they "are working to dismiss the claims in the Indian lawsuit against the Trustee," yet the very day this Response was filed, the same Voizzit Defendants appeared in the Indian court and failed to dismiss their suit. [Adv. D.I. 80 (the "Resp.") ¶16.] Instead of returning the $1,063,752 they took from the Debtors' Apple account as required by paragraph 5 of the TRO (and PI), Defendants have kept those funds and have stated their refusal to return them. Defendants also have kept important data on customer usage of the Debtors' platforms in violation of paragraphs 4 and 5 of the TRO (and PI.) And while they belatedly took a stab at providing a list of property they seized in violation of the stay, that list is incomplete, was delivered too late, and by their own

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to it in the *Emergency Motion for Contempt to Hold the Voizzit Defendants in Contempt of Court for their Failure to Comply with the Courts November 19 Order* [Adv. D.I. 18] (the "Contempt Motion") or the Status Report [Adv. D.I. 55], as applicable.

admission was not inclusive of all Debtor assets used prior to the issuance of the TRO. (Resp. ¶ 38).

Rather than comply, Defendants have thumbed their nose at this Court and the Trustee, refusing to comply with discovery that this Court ordered on an expedited basis [Adv. D.I. 62, ¶ 3], while at the same time claiming in their Response that "[a]dditional discovery" (which they refuse to respond to or produce) would somehow "demonstrate that there are impossibilities to the Trustee's claims…." [Resp. ¶ 38.] But all their willful evasion of the Trustee's very narrow discovery proves is that the Voizzit Defendants have no intention of complying with this Court's orders without the imposition of sanctions.

Defendants' conduct before this Court is contemptuous. They have caused serious harm to the Debtors through their aggressive campaign to wrongfully seize the Debtors' assets in violation of the automatic stay. They have delayed the administration of the estates and threatened the value of the Debtors. This Court should grant all available relief both to compensate the estates but also to make it clear that Defendants' compliance with this Court's orders is not optional.

## ARGUMENT

### I.    THE DEFENDANTS ARE IN CIVIL CONTEMPT.

Section 105(a) of the Bankruptcy Code grants a bankruptcy court the authority to hold a litigant in contempt of court for violating a court order. *In re BYJU's Alpha, Inc.*, 661 B.R. 109, 117 (Bankr. D. Del. 2024). "To hold a party in civil contempt, a court must find that (i) a valid court order existed, (ii) the party charged with contempt had knowledge of the court order, and (iii) the party charged with contempt disobeyed the court order. These elements must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged with contempt." *In re 40 Lake View Drive, LLC*, 2018 WL 1665697, at *3 (D.N.J. Apr. 6, 2018)

(citing *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003)) (internal quotations omitted); *accord BYJU's Alpha*, 661 B.R. at 117. As set forth below, each of these elements is met here.

**A.  The TRO Is A Valid Court Order.**

There is no question that the TRO is a valid court order. [Adv. D.I. 14.] No higher court has stayed its implementation, and on December 3, 2024, the Court confirmed its terms in a PI. [Adv. D.I. 36.] No one appealed the PI or sought a stay from a higher court. Therefore, the TRO is a valid order that the parties must obey.

**B.  Defendants Had Knowledge Of The TRO (And The Subsequent PI).**

  *i.     The Voizzit Defendants' Knowledge.*

In their Response, the Voizzit Defendants do not deny that they knew about the TRO. Instead, they side-step the issue, making three points: (1) "[i]t was impossible … to comply with Orders that were not served upon them in bankruptcy proceeding" [Resp. ¶ 14]; (2) even if their counsel knew about the TRO that knowledge should not be imputed to them [*id*. ¶¶ 30-31]; and (3) to enforce the TRO and obtain a contempt finding, the Trustee must show they knew about "the bankruptcy, relevant Orders, and the Automatic Stay" when they committed the acts that led to the issuance of the TRO. [*Id.* ¶ 29.] These arguments are without merit for multiple reasons.

***First***, the Court has already found, at a hearing at which Mr. Vellapalath was present via Zoom, that Defendants had knowledge of the TRO when the Court issued its Show Cause Order:

> But in the interim, I will be issuing an order to show cause why I should not hold the Defendants in contempt for violating my stay order, my TRO after it had been entered, ***and they were certainly fully aware of it***. So I will be issuing an order to show cause on that.

[D.I. 366 ("12/3/24 Tr.")] at 67-68 (emphasis added).] Mr. Vellapalath, who was present at the December 3, 2024 hearing when the Show Cause Order was entered and could have challenged

3

this finding then on his own behalf and for his two companies, is not entitled to relitigate the question of knowledge upon which the Show Cause Order was based.

**Second**, the Voizzit Defendants' barely developed service argument appears to refer to the fact that that the Trustee's Noticing Agent did not send them the TRO when it served the TRO on Mr. Ravindra, who was unrepresented at the time. [Adv. D.I. 17.] This argument is beyond specious. At the time the TRO was entered, Christopher Samis of Potter Anderson & Corroon LLP ("<u>Potter Anderson</u>") represented the Voizzit Defendants.[3] Rule 5(b)(1) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7005, states that "[i]f a party is represented by an attorney, service under this rule **must** be made on the attorney unless the court orders service on the party." Fed. R. Civ. P. 5(b)(1) (emphasis added). The Court did not order service on the parties here; therefore, the Trustee was required to serve the Voizzit Defendants' then counsel of record Mr. Samis, and not the Voizzit Defendants individually. Even if Mr. Vellapalath were not represented, there can be no suggestion that Mr. Vellapalath did not receive such notice given his repeated attendance at and virtual participation in various hearings, as well as separate filings in this Adversary Proceeding, attesting to his interactions with Potter Anderson

---

[3]     The specific parties represented by Potter Anderson changed as it suited Mr. Vellapalath's purposes, but at least in some instances, Potter Anderson acted as and held itself out to be the counsel for Mr. Vellapalath personally in addition to the two Voizzit entities. For example, on November 17, 2024—only two days before the TRO was entered—Potter Anderson signed and served Mr. Vellapalath's responses and objections to the Trustee's deposition notice, a copy of which is attached hereto as <u>Exhibit C</u>, in which Potterson Anderson referred to itself as "Counsel for Voizzit Information Technology LLC, Voizzit Technology Private Ltd., and Rajendran Vellapalath." [Ex. C at 2.]

In any event, because Mr. Vellapalath is the self-described "founder and owner" of the two Voizzit entities (*see* Adv. D.I. 59-3 at ¶ 1), their knowledge of the TRO is imputed to him. *See, e.g.*, *ASB Allegiance Real Est. Fund v. Scion Breckenridge M'ging Member, LLC*, 2012 WL 1869416, at *15 (Del. Ch. May 16, 2012) ("knowledge of an agent acquired while acting within the scope of his or her authority is imputed to the principal; *accord Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 255 (2d Cir. 1995) (same) (collecting cases); *see also Shotwell v. Stafford*, 2019 WL 1324942, at *5 (D. Del. Mar. 25, 2019) (*"*Notice may also be imputed where parties share an identity of interest. In other words, the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." (internal quotations omitted)).

and intention to comply with court orders. [*See e.g.,* D.I. 289; Adv. D.I. 25.] Moreover, under Rule 5(d)(1)(B), "[n]o certificate of service is required when a paper is served by filing it with the court's electronic-filing system." Fed. R. Civ. P. 5(d)(1)(B). Here the Court's ECF system shows that it served Mr. Samis (and others at Potter Anderson) with the TRO. (*See* Exhibit A hereto.) Therefore, the fact that the Noticing Agent did not separately send a copy of the TRO to Mr. Vellapalath and his two companies, or list them on its certificate of service, is of no moment as their counsel was indisputably served in accordance with the applicable Rule.[4]

And even if the Voizzit Defendants had not been properly served through their counsel (they were), for purposes of contempt, "[a]s long as the party has actual knowledge [of the underlying order], it is not necessary for the party to have been served with or formally notified of the order in question." *In re Ransom*, 599 B.R. 791, 803 (Bankr. W.D. Pa. 2019). "[A] person is in contempt of court if he knowingly violates a court order, whether or not he received a formal notice." *Fid. Mortg. Invs. v. Camelia Builders, Inc.*, 550 F.2d 47, 52 (2d Cir. 1976). As discussed below, Mr. Vellapalath was present at the November 21 and December 3 hearings where the TRO was discussed and where the Court decided to issue the Show Cause Order. Mr. Vellapalath's attendance at and participation in hearings in this Adversary Proceeding, as well as his declarations attesting to the Voizzit Entities' court intention to comply with the Court's orders [*see e.g.,* D.I. 289; Adv. D.I. 25] demonstrate his actual knowledge, both in his individual capacity and as agent for the Voizzit Entities.

***Third***, the long established rule, as the Voizzit Defendants tacitly concede, is that "notice to counsel is imputed to a client with regards to matters in which the lawyer represents the client" and "[t]he knowledge that is imputed to the [client] is actual knowledge, not constructive." *New*

---

[4]     Once Mr. Samis withdrew, the Trustee served the all Voizzit Defendants directly with the PI, the Show Cause Order, and the Noticer of Rescheduled Hearing Date. [Adv. D.I. 42, 43, 48.]

*Jersey Reg'l Council of Carpenters v. Chanree Const. Co.*, 2014 WL 980649, at *3 (D.N.J. Mar. 13, 2014) (citing *In re Color Tile, Inc.*, 475 F.3d 508, 513 (3d Cir. 2007)). As the Supreme Court explained, this rule is necessary for "our system of representative litigation" to function. *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962). If represented litigants could pick and choose when notice to their counsel counted, the courts would be clogged with unnecessary fights. Indeed F.R.C.P. 5, discussed above, is premised on the idea that notice to counsel is notice to the client. Accordingly, courts apply this rule even in contempt proceedings: *In re Campbell*, 649 B.R. 831, 837 (Bankr. S.D. Miss. 2023) (attorney knowledge imputed in contempt proceeding); *Square D Co. v. Scott Elec. Co.*, 2007 WL 3488809, at *5 n.10 (W.D. Pa. Nov. 14, 2007), *order clarified*, 2008 WL 1932307 (W.D. Pa. Apr. 30, 2008) (same).

Here, there is no question that the Voizzit Defendants' then counsel of record had notice of the TRO and that he represented the Voizzit Defendants in this Adversary Proceeding. Starting even before the complaint was filed, on November 18, 2024, the Trustee's counsel gave Mr. Samis advance warning that the Trustee intended to move for a temporary restraining order against his clients that day related to their taking of the Google accounts. [Adv. D.I .77 ("Root Decl.") ¶10, Ex. I.][5] Later that day, Trustee's counsel served Mr. Samis via electronic mail with the TRO papers [*Id*. ¶ 12.]

The next day, Mr. Samis appeared at the TRO hearing, identifying himself as "Chris Samis from Potter Anderson for the Voizzit entities" and stating that he had "a couple of comments to the form of Order." [D.I. 323 ("11/19/24 Tr.") at 19.] His co-counsel, Nicholas Mozal, argued

---

[5]  Even before that conversation, at the November 12 hearing involving the Voizzit entities' theft of the Debtors' applications with Apple, at which Mr. Samis appeared for the Voizzit entities, the Trustee previewed that she would likely be raising the Google-related stay violations in a separate proceeding. [D.I. 269 ("11/12/24 Tr.") at 5-6.] And on November 15, 2024, Trustee's counsel asked the Voizzit Defendants both orally and in writing to return the Google accounts. [*See* Root Decl., ¶ 6 and Ex. C.]

against the TRO. [*Id.* at 23.] The Court overruled his objections and directed the parties to submit a draft order. [*Id.* at 27.] Following the hearing, at 11:33 a.m. E.T., Ms. Root circulated a draft TRO to both counsel via electronic mail. [Root Decl., ¶ 14.] Mr. Mozal responded with a question at 11:58 a.m. E.T. and Ms. Root answered him at 12:09 p.m. E.T. [*Id.*] Neither Mr. Mozal nor Mr. Samis provided the Trustee's counsel with any additional comments. [*Id.*] The Trustee filed a certification of counsel identifying this e-mail exchange. [Adv. D.I. 13, ¶ 8.]

The Court entered the TRO at 5:13 p.m. E.T. effective as of 10:34 a.m. E.T. [Adv. D.I. 14.] At 5:19 p.m. E.T., the TRO was served on the Voizzit Defendants' counsel by ECF Service. (*See* Ex. A.) At 5:21 p.m. E.T., Ms. Root e-mailed a copy of the TRO to Mr. Samis. [Root Decl., ¶ 16.] Thus, the record before this Court establishes that the Voizzit Defendants' counsel knew about the TRO and represented the Voizzit Defendants in connection with the entry of the TRO.

Faced with this record, the Voizzit Defendants argue that even if counsel's knowledge is generally imputed to the client, imputation should not apply when the client is facing contempt. [Resp. ¶¶ 30-31.] Their primary support for this argument is a passage from an out-of-district lower court decision that questions whether imputation applies when a client denies being made aware of the order. [*Id.* at ¶ 31 citing *Ransom*, 599 B.R. at 806.] That fact pattern, however, simply does not exist here.

At the November 21 hearing, Mr. Samis specifically told the Court at the November 21 hearing that he had discussed the TRO with "his client." He stated:

> MR. SAMIS: So, according to my client, Your Honor, they say they have. … But they have told me, anyway, that they believe they are compliant. We had a conversation about the order. ***We also had a conversation about the TRO. They've also indicated to us they're planning to comply with the two provisions of the TRO order that required turnover of information to Google by Friday.***

[11/21/24 Tr. at 20 (emphasis supplied).] Later in the hearing, Mr. Samis again represented that he

had told his clients about the TRO and its deadlines, stating:

> Your Honor, the Court orders, we've been told by the client that they're planning on doing all of those things, ***especially with respect to the TRO order*** and they're just trying to get the analysis done on the funds returned. I don't know exactly where that sits. ***We did send another email advising them that the deadlines were, you know, approaching, and they are aware of them***.

[*Id*. at 95-96.]

The November 21 hearing sheet also shows that Mr. Vellapalath attended the hearing via Zoom and thus was present when Mr. Samis made these representations to the Court. [D.I. 332.] Mr. Vellapalath never corrected what his counsel told the Court, either during that hearing or any subsequent time. Given Mr. Samis's representations as an officer of the court, there can be no serious argument that Mr. Samis failed to tell Mr. Vellapalath about the TRO. And the Court knows Mr. Vellapalath knew about the TRO because Mr. Vellapalath was present at this hearing and did not tell the Court his counsel had not told him about the TRO. [11/21/24 Tr. at 19-20, 95-96.][6]

Accordingly, the Voizzit Defendants' cited case, *Ransom*, is inapplicable. The Voizzit Defendants were told by counsel about the TRO and their compliance obligations thereunder. Regardless, the statements in *Ransom* about imputation are *dicta*, as the court there found knowledge based on other facts and stressed it was not establishing a general rule that attorney knowledge "can never be imputed to the client for purposes of finding civil contempt." 599 B.R. at 806. The other two cases the Voizzit Defendants cite—*In re Clayton*, 2012 WL 112940, at

---

[6]     In addition to Mr. Samis's statements about the TRO, the Court asked Mr. Samis: "Has Voizzit returned all of the information and provided the Chapter 11 Trustee with all information and returned control to them of all of the debtor information they took?" [11/21/24 Tr. at 19.] Trustee's counsel stated: "[t]he other point we were going to make is that by tomorrow, close of business, they are supposed to do certain things under the TRO you entered on Tuesday and there's been no effort to do any of those things." [*Id*. at 95.] And the Court even warned Mr. Vellapalath that if the TRO is not obeyed, there would be consequences: "Okay. Well there are consequences if they don't comply with the order." [*Id*. at 96.]

*4 (Bankr. E.D. Tenn. Jan. 12, 2012) and *In re Patterson*, 111 B.R. 395, 398 (Bankr. N.D.N.Y. 1989)—for the proposition that counsel's knowledge is not imputed in connection with contempt hearings are also distinguishable because by the time the applicable order was entered in those cases, counsel was no longer in communication with the clients. [Resp. ¶ 31.] That is not the case here.

**Fourth**, the Voizzit Defendants are mixing apples and oranges when they argue that their supposed lack of knowledge of the automatic stay when they took the Google accounts in violation of the automatic stay excuses their failure to comply with the TRO (and PI). Whether they had knowledge of the bankruptcy when they seized the Google accounts is an issue that goes to the willfulness of their stay violation. The Court held a hearing on this factual issue on November 21 and the matter is under advisement. While the Trustee submits that the evidence adduced at that hearing proves the Voizzit Defendants knew about the bankruptcy when they took the Debtors' Google, Apple, GitHub, and Stripe accounts, whether they did or not is not relevant here. The only relevant knowledge for purposes of this hearing is whether they had knowledge of the TRO. And as discussed above, they did.

**Finally**, to the extent that there is any question about the Voizzit Defendants' actual knowledge of the TRO, the *pro se* filings that Mr. Vellapalath made in opposition to the PI certainly end that debate. Ahead of this Court's hearing on December 3, 2024, Mr. Vellapalath prepared his own filings in response to the PI.[7] Representing himself, Mr. Vellapalath declared, "***Upon entry of the TRO***, Voizzit has substantially complied with its terms…." [Adv. D.I. 25, ¶ 13 (emphasis added).] If neither Mr. Vellapalath nor his two companies knew of the TRO, then, to state the obvious, they could not have done anything "upon entry of the TRO" or have "complied

---

[7]        Potter Anderson stated that it filed Mr. Vellapalath's papers "as a courtesy." [Adv. D.I. 26.]

with its terms."[8] Plainly their latest claim that they did not know of the TRO is patently false. The

Court should therefore find again that the Voizzit Defendants knew about the TRO.

> ii.    *Vinay Ravindra's Knowledge.*

Despite being served, Defendant Ravindra has never appeared to defend himself. The

record establishes that he was served with the complaint and moving papers, the TRO after it was

entered, the PI, and the Show Cause Order. [Adv. D.I. 17, 42, 43.] Accordingly, the Court should

find that he had knowledge of the TRO.

**C.  The Defendants Have Not Complied With The TRO.**

Although the Voizzit Defendants vaguely allege that they have complied with the TRO, in

fact they plainly failed to do so. In light of this, their reliance on *Taggart v. Lorenzen*, 587 U.S.

554 (2019) is puzzling. In *Taggart*, the Supreme Court considered the "criteria for determining

when a court may hold a creditor in civil contempt for attempting to collect a debt" in violation of

a bankruptcy court's discharge order. 587 U.S. at 556. The Court concluded that a creditor may be

held in contempt "when there is no objectively reasonable basis for concluding that the creditor's

conduct might be lawful under the discharge order." *Id.* at 560.

The Third Circuit has not determined whether *Taggart* extends beyond the discharge

context, but if it does, there can be no question that the Voizzit Defendants' actions (and inactions)

since the entry of the TRO violate its terms, and that the Voizzit Defendants knew their conduct

was wrongful. Attached as <u>Exhibit B</u> is a chart detailing the various TRO (and PI provisions) and

the failure to comply with each. The record further establishes that the Voizzit Defendants' former

---

[8]    Elsewhere in his *pro se* filings, Mr. Vellapalath makes additional statements evidencing that he and his companies knew about the TRO: Adv. D.I. 24 at 2 ("On November 19, 2024, the Court held a hearing … and entered a temporary restraining order."); *id.* ("Pursuant to the TRO, Voizzit, Voizzit India … and Rajendran Vellapalath … hereby file the objection."); *id.* at ¶ 17 ("Despite Voizzit's compliance with the Stay Order and the TRO…."); *id.* at ¶ 23 ("Since the entry of the TRO, Voizzit has been substantially harmed…."); *id.* at III.,V. (arguing they complied with the TRO).

counsel discussed the need to comply with the TRO with them and that Mr. Vellapalath participated in at least two hearings at which the TRO and the need for compliance were discussed. On December 3, when the Show Cause Order was issued, the Court explicitly told Mr. Vellapalath:

> Mr. Vellapalath, I want to make this abundantly clear: The only person who controls these companies is the Chapter 11 Trustee. Not you, not Voizzit, not anybody else. The Chapter 11 Trustee controls these entities and you need to act expeditiously to unwind whatever you've done to take assets from these debtors, including the million-plus dollars that was taken from the Apple account that still hasn't been recovered.

[12/3/24 Tr. at 68.] Given this record, there is no "fair ground of doubt" as to the "wrongfulness" of the Voizzit Defendants' intentional violations of the TRO. *Taggart*, 587 U.S. at 561.

And the fact that the Voizzit Defendants provided an incomplete list of the assets they took from these estates at the eleventh hour does not cure their contempt. This "too little too late" conduct is also undercut by the fact that on January 27, just two days before the contempt hearing, they appeared in an Indian court and instead of dismissing their lawsuit, as the Google TRO requires, they continued to prosecute it and never informed the Indian court of the Google TRO and its requirements. Accordingly, the Court should find again, as it did when it issued its Show Cause Order, that Defendants have not complied with the TRO and seemingly have no intention of doing so.

## II.    DEFENDANTS HAVE FAILED TO ESTABLISH ANY DEFENSE TO THE SHOW CAUSE ORDER.

### A.    Defendants' Impossibility Defense Lacks Merit.

Unable to deny the validity of the TRO or that they knowingly violated it, the Voizzit Defendants argue that it is impossible for them to comply with the TRO and it would therefore be unfair to hold them in contempt. The Voizzit Defendants' impossibility argument is built on a false

premise: that the reason the Trustee seeks contempt sanctions is because Mr. Vellapalath will not attend the contempt hearing in person. [Resp. ¶¶ 17, 37-38.]

Not so. The Trustee is seeking contempt because: (i) the Voizzit Defendants did not return the Google accounts to the Trustee causing the Trustee to incur expense and delay; (ii) the Voizzit Defendants exercised control over the Debtors' property when they filed suit in India seeking to unwind the TRO and PI; (iii) the Defendants have refused to return the money they took from the Debtors' accounts; (iv) the Defendants did not account for the property they took; and (v) the Defendants have not turned over data about customer usage of the platforms while they controlled the Google accounts. Correcting these actions does not require Mr. Vellapalath to travel to the United States. Thus, even if his claim that he applied for a visa is true (and the Trustee has reason to doubt this claim), Mr. Vellapalath would not need a visa if he would simply do what the Court ordered.

Other than claiming Mr. Vellapalath cannot travel to the United States, the Voizzit Defendants' only other vaguely described impossibility claim is Mr. Vellapalath's statements in his Declaration that he cannot determine what he took from the Debtors because he no longer has access to the accounts. [Adv. D.I. 59-3 at ¶ 15.] But that is not an impossible task. Indeed, given that Mr. Vellapalath operates a tech company one would expect that he would have the ability to search his systems to certify that he has returned all data and applications to the Trustee. But if he cannot do so, the Court should order the Voizzit Defendants to hire an independent company to do this work because it is possible to be done. As to any other claim of impossibility, the Voizzit Defendants have not specifically explained why it is impossible for them to do what the TRO required or supported that explanation with any evidence. Because they bear the burden of demonstrating impossibility, the Court should reject this defense. *See United States v. Rylander*,

12

460 U.S. 752, 757 (1983); *United States v. Chabot*, 681 F. App'x 134, 136 (3d Cir. 2017).

### B. The Voizzit Defendants Cannot Re-Litigate The Merits Of The TRO Or PI.

In their Response, the Voizzit Defendants rehash their claim that they own the Debtors—a claim they made in opposing the TRO. [Resp. ¶¶ 2-4.] They also complain about prior testimony that the Court found credible. [*Id.* at ¶ 7; *see* 12/3/24 Tr. at 72 ("[m]ost of [Mr. Vellapalath's] declaration is simply hearsay or based on unsubstantiated allegations against witnesses who are not here today [including Mr. Hailer], who actually came and testified before me live, and I found to be very credible").] To the extent that these matters are in their Response because they intend to argue that the TRO should not have been entered, that would be improper. It is well established that a litigant facing contempt is not allowed to relitigate the merits of the order he has violated. "[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948). Thus, the validity of an underlying order is "not open to collateral attack in a contempt proceeding for violating it." *Harris v. City of Phila.*, 47 F.3d 1333, 1337 (3d Cir. 1995); *accord In re NNN 400 Capitol Ctr. 16 LLC*, 2022 WL 872643, at *10 (D. Del. Mar. 24, 2022). "In a contempt proceeding brought to punish a delinquent for his failure to obey a turnover order the sole issue is whether the delinquent's failure to obey the order is excused by reason of events which have occurred since the date as of which the court in the turnover proceeding found that he had the property in his possession or under his control." *In re Amdur*, 137 F.2d 708, 710 (3d Cir. 1943). Accordingly, the Court should not allow the Voizzit Defendants to challenge the merits of the TRO or other rulings the Court has previously made.

### C. It Is Not Unfair To Hold The Defendants In Contempt.

One of the themes of the Voizzit Defendants' Response is that it is unfair to hold them in

contempt because they are foreign defendants who lack an understanding of what they are required to do and have not been given a fair opportunity to understand their obligations. But this is not true. Experienced counsel represented the Voizzit Defendants and that counsel told the Court they discussed the TRO and its compliance with their client. [11/21/24 Tr. at 20, 95-96.]

In addition to the fact that they previously had competent U.S. counsel to advise them (which then withdrew when the Voizzit Defendants failed to heed counsel's advice [12/3/24 Tr. at 74]), as explained above, this Court told Mr. Vellapalath (and thus the two Voizzit entities) explicitly what they needed to do. At the end of the December 3 hearing, the Court emphasized that "[t]he only person who controls these companies is the Chapter 11 Trustee" and that the Voizzit Defendants "need[ed] to act expeditiously to unwind whatever [they've] done to take assets from these debtors[.]" [12/3/24 Tr. at 68.] The fact that the Voizzit Defendants have refused to hear to what the Court (and their counsel) told them they needed to do does not make it unfair to hold them in contempt. The fact that they chose to ignore their prior counsel's advice and hire new counsel does not change this analysis. New counsel was hired on December 30, 2024, almost a month ago, and has had ample time to explain to the Voizzit Defendants what they needed to do under the TRO.

### III.    THE TRUSTEE IS ENTITLED TO CIVIL CONTEMPT SANCTIONS.

In light of the Voizzit Defendants' blatant disregard for this Court's orders, the Trustee is entitled to civil contempt sanctions. As the Third Circuit has instructed, sanctions for civil contempt serve two purposes: "to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994); *see also Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir. 1990) (same). Here, this Court should award sanctions both to compensate the Trustee for the expenses she has

incurred, and continues to incur, due to the Voizzit Defendants' defiance, and to coerce the Voizzit Defendants into compliance. *See Int'l Plastics & Equip. Corp. v. Taylor's Indus. Servs., LLC*, 2011 WL 1399081, at *5-6 (W.D. Pa. Apr. 12, 2011) (holding that incarceration, a per diem fine, and reimbursement of attorneys' fees incurred are permissible civil contempt sanctions).

*First*, the Trustee has incurred significant legal and advisory fees and costs—$392,180 as of the filing of this Reply—as result of the Voizzit Defendants' failure to comply with the TRO. [Adv. D.I. 76, ¶ 17, Ex. E.] These fees and costs include the fees of the Trustee's bankruptcy counsel to prosecute the contempt motion and the subsequent rule to show cause hearing, the fees of her India counsel to address the India Lawsuit and attend two in-person hearings, and the fees of the Trustee's financial advisors in working with Google to develop a work-around for the fact that the Voizzit Defendants did not comply with the TRO and transfer the Google accounts back to the Trustee's control. [*Id*.]

The estates have also suffered harm because the Voizzit Defendants' interference has slowed the sale process. This Court is well aware of the analogy that a debtor's estate is a "melting ice cube" in bankruptcy. Here, the initial milestones for the sale of the Debtors' businesses anticipated the sale of the Debtors' businesses to be complete by December 2024 (for Epic Creations, Inc.) and January 2025 (for Tangible Play, Inc. and Neuron Fuel, Inc.). [D.I. 236.] As a result of the Voizzit Defendants' actions, the Trustee was forced to slow the sales process and negotiate extensions of the milestones with the DIP lenders. While it is difficult to quantify this harm, every day that the Debtors remain in bankruptcy comes at a significant expense, both in terms of fees to administer the estates, but also because of the risk that an extended bankruptcy might impair the sale price for the Debtors.

*Second*, the Voizzit Defendants are not motivated by this Court's Orders. That much is

clear. As set forth in Exhibit B, they remain in violation of the TRO, and just this week, they decided to also violate this Court's order requiring them to comply with discovery. Given the Voizzit Defendants' stated wealth (businesses worth "hundreds of millions" and a principal who sold a business "for a few hundred million dollars" [D.I. 288, ¶ 12.], only a significant fine is likely to cause them to comply. The Trustee requests a fine of $25,000 per day, which is well within the range of fines that courts approve. *See, e.g., Satyam Computer Servs., Ltd. v. Venture Glob. Eng'g, LLC*, 323 F. App'x 421, 427 (6th Cir. 2009) ($10,000 per day, escalating to $25,000 per day after one week); *BOC Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, 2022 WL 17581775, at *17 (S.D.N.Y. Dec. 12, 2022) ($40,000 per day, escalating to $80,000 per day after two weeks, and to $120,000 after four weeks); *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*, Adv. Pro. 24-50013 [Adv. D.I. 313, ¶ 1] ($10,000 per day fine).

*Finally*, given the egregious nature of the Voizzit Defendants' conduct, an order of confinement is appropriate. *See, e.g., Byju's Alpha*, 661 B.R. at 117-18; *In re Tate*, 521 B.R. 427, 446 (Bankr. S.D. Ga. 2014); *In re Frankel*, 192 B.R. 623, 632 (Bankr. S.D.N.Y. 1996). While the Voizzit Defendants may be outside of the United States, if they come to this country, there should be an order waiting for them. That signals to the market that their positions are without merit which is important to the sale process. And if the Voizzit Defendants do not dismiss the India Lawsuit, it signals to the court in India the seriousness of the stay violations.[9]

## **CONCLUSION**

For the reasons set forth herein and in the Motion, the Trustee respectfully requests that the Court hold Defendants in contempt, enter a judgment in the amount of $392,180 and impose a daily monetary fine and order of confinement.

---

[9]    Defendants style their Response as also asking for dismissal of the Trustee's complaint, but the Response does not comply with F.R.C.P. 12(b), including because it does not accept as true all well-pled allegations.

Dated: January 28, 2025
      Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ Alexis R. Gambale*
Henry J. Jaffe (No. 2987)
Joseph C. Barsalona II (No. 6102)
Alexis R. Gambale (No. 7150)
824 N. Market Street, Suite 800
Wilmington, DE 07601
Telephone: (302) 592-6497
Email: hjaffe@pashmanstein.com
      jbarsalona@pashmanstein.com
      agambale@pashmanstein.com

-and-

**JENNER & BLOCK LLP**
Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
William A. Williams (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 923-2952
Email: csteege@jenner.com
      mroot@jenner.com
      wwilliams@jenner.com

*Counsel to the Trustee*